UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARY D.,                        :
                               :
        Plaintiff,             :
                               :
        v.                     :  CASE NO. 3:20-cv-656 (RAR)
                               :
KILOLO KIJAKAZI, Acting        :
Commissioner of Social         :
Security,[1]                   :
                               :
        Defendant.             :

## <u>**RULING ON PENDING MOTIONS**</u>

Mary D. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated February 5, 2020.  Plaintiff timely appealed to this Court.  Currently pending are plaintiff's motion for an order reversing and remanding her case for a hearing (Pl.'s Br., ECF No. 21-2) and defendant's motion to affirm the decision of the Commissioner (Def.'s Br., ECF No. 23-1).

For the following reasons, plaintiff's motion to remand is GRANTED and the Commissioner's motion to affirm is DENIED.

---

[1] Andrew M. Saul was Commissioner of Social Security when this case was filed. On July 9, 2021, Dr. Kilolo Kijakazi became Acting Commissioner.  Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kijakazi is automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

I.   <u>Standard</u>

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function."  <u>Zambrana v. Califano</u>, 651 F.2d 842, 844 (2d Cir. 1981).[2]  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ."  42 U.S.C. § 405(g).  Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  <u>Id.</u>; <u>Wagner v. Sec'y of Health and Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence.  <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982).  Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

support the plaintiff's contrary position.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record."  Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."  42 U.S.C. § 423(d)(1).  To determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[3]

---

[3] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[4]

## II.  Procedural History

Plaintiff initially filed for disability insurance benefits under Title II on July 1, 2013. (R. 174–76.)  Plaintiff alleged that congenital heart disease, pulmonary hypertension, and arrythmias limited her ability to work, with a disability onset date of June 28, 2013.  (R. 71, 175, 205.)  The initial application was denied on September 11, 2013, and again upon reconsideration on September 23, 2013.  (R. 97, 98–101.) Plaintiff then filed for an administrative hearing, which was held by ALJ Alexander Borré (hereinafter "the ALJ") on August 25, 2015.  (R. 168, 258–264.)  The ALJ issued an unfavorable decision on October 15, 2015.  (R. 9–22.)  Plaintiff filed a

---

this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[4] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

request for review with the Appeals Council on December 15, 2015.  (R. 7, 1055.)  The Appeals Council denied plaintiff's request for review on March 28, 2017.  (R. 1-3, 1041-43.)

Plaintiff filed an action for review of the unfavorable decision in the United States District Court for the District of Connecticut, and the Commissioner moved to remand the case for further administrative proceedings.  (R. 1047-48.)  The Appeals Council ordered the case remanded to an ALJ on February 1, 2019. (R. 1052-53.)  The Appeals Council's mandate instructed the ALJ to further evaluate plaintiff's alleged symptoms, evaluate medical opinions, obtain medical expert evidence relevant to plaintiff's maximum residual functional capacity, and obtain supplemental evidence from a vocational expert, if necessary. (R. 1052-53.)

The ALJ held a second administrative hearing on June 11, 2019.  (R. 1080.)  The ALJ held a third administrative hearing on December 12, 2019, to elicit further testimony from, and questioning of, medical expert Dr. James Todd.  (R. 1144.)  The ALJ issued an unfavorable decision on February 5, 2020.  (R. 920-32.)  Plaintiff did not file a request for review with the Appeals Council, which rendered as final the ALJ's decision. Plaintiff then filed this action seeking judicial review.  (ECF No. 1-1.)

III. <u>The ALJ's Decision</u>

After following the five-step evaluation process, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act from her onset date of June 28, 2013 through her date last insured ("DLI") of December 31, 2018.  (R. 923.)   At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity between her alleged onset date and her DLI.  (R. 923.)  At step two, the ALJ found that plaintiff had the following severe impairments: status post atrial fibrillation ablation, pulmonary hypertension, congenital heart defect, obesity status post gastric bypass, and lumbosacral degenerative disc disease.  (*See* R. 923.)

At step three, the ALJ found that plaintiff's severe impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. § Pt. 404, Subpt. 1, App. 1. (*See* R. 923.)  The ALJ specifically considered plaintiff's degenerative disc disease as a spinal disorder under Listing 1.04 and found that plaintiff did not demonstrate the required criteria of "nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis." (R. 923.)  The ALJ considered plaintiff's cardiac impairments under Listings 4.02 and 4.05. (*See* R. 924.)  The ALJ found that plaintiff's impairments did not meet Listing 4.02 as of her DLI because medical expert Dr. Todd testified that her condition prior to May of 2019 did not

6

rise to the level of heart failure.  (R. 924.)  The ALJ found

that plaintiff's impairments did not meet Listing 4.05 because

her recurrent arrhythmias resolved with ablation and her

condition stabilized after surgery.  (*See* R. 924.)  Throughout

this evaluation, the ALJ specifically "considered the cumulative

effect of the [plaintiff's] obesity on the other impairments"

and noted that plaintiff lost weight following her bypass

surgery and improved her exercise tolerance. (R. 924.)

The ALJ found that plaintiff had the residual functional

capacity ("RFC")

> to perform sedentary work as defined in 20 CFR
> 404.1567(a) except no climbing of ladders, ropes or
> scaffolds, occasional climbing of ramps and stairs, no
> crawling, occasional stooping, kneeling and crouching,
> frequent balancing; no exposure to hazards such as open,
> moving machinery and unprotected heights; occasional
> exposure to temperature and humidity extremes; no
> concentrated exposure to dust, gases and fumes; and
> occasional pushing and pulling up to 20 pounds with the
> lower extremities.

(R. 924.)  At step four, the ALJ concluded that plaintiff could

perform her past relevant work as a payroll supervisor as

generally and actually performed, thereby ending the evaluation

process.  (R. 931.)

IV.  Discussion

As a threshold matter, plaintiff argues that the ALJ failed

to develop the administrative record because the medical records

contained two gap periods and the record lacked opinions from

plaintiff's treating sources.  (Pl.'s Br. at 10-17.)  Plaintiff

then argues that substantial evidence did not support the ALJ's

RFC determination and the ALJ's step four determination.  (Id.

at 19-24.)  For the reasons explained below, the Court grants

plaintiff's motion and remands the case for further proceedings.

### A. Whether the ALJ Failed to Adequately Develop the Administrative Record.

Plaintiff argues that the ALJ failed to develop the record

in two ways: first, the administrative record does not contain

medical records from June 2015 to March 2017 and from August

2017 to February 2018; and second, the ALJ neither requested nor

obtained opinions from all treating providers.  (Pl.'s Br. at

10-16.)  Defendant responds that there is no gap in the record

with respect to either time period.  (Def.'s Br. at 14-20.)

Whether an ALJ fulfilled his duty to develop the

administrative record is a threshold question.  Intonato v.

Colvin, No. 13 Civ. 3426 (JLC), 2014 WL 3893288, at *8 (S.D.N.Y.

Aug. 7, 2014).  This duty "exists even when the claimant is

represented by counsel."  Phelps v. Colvin, 20 F. Supp. 3d 392,

401 (W.D.N.Y. 2014).  "When an unsuccessful claimant files a

civil action on the ground of inadequate development of the

record, the issue is whether the missing evidence is

significant, and plaintiff bears the burden of establishing such

harmful error." <u>Parker v. Colvin</u>, No. 3:13-cv-1398 (CSH), 2015 WL 928299, at *12 (D. Conn. Mar. 4, 2015).

i.   *Plaintiff has not established that any gap in medical records is significant.*

While an ALJ has an affirmative duty to develop the record, "an ALJ is under no obligation to fetch records that do not exist or are not significant." <u>Crespo v. Comm'r of Soc. Sec.</u>, No. 3:18-cv-435 (JAM), 2019 WL 4686763, at *4 (D. Conn. Sept. 25, 2019) (citing <u>Morris v. Berryhill</u>, 721 F. App'x 25, 28 (2d Cir. 2018)) (noting that the plaintiff had not indicated, either in her motion or in the record, whether the plaintiff had treatment notes for the relevant gap period).  Mere arguments that missing records could be significant do not suffice.  *See* <u>Santiago v. Astrue</u>, No. 3:10-cv-937 (CFD), 2011 WL 4460206, at *2 ("The plaintiff makes only a general argument that any missing records possibly could be significant, even if they exist.  That argument is insufficient to carry his burden.").  Rather, "[t]o demonstrate prejudice [the claimant] must show that the additional medical reports would undermine the ALJ's decision." <u>Lena v. Astrue</u>, No. 3:10-cv-893 (SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012); *cf.* <u>Bozzuto v. Colvin</u>, No. 3:16-cv-964 (DFM), 2018 WL 4300022, at *11-13 (D. Conn. Sept. 10, 2018) (dismissing the plaintiff's missing records argument because while the plaintiff argued that the ALJ should

have obtained information about hand surgeries, the plaintiff
failed to articulate how the missing records affected the ALJ's
decision and the record did not suggest the records would be
material).

Plaintiff alleges that the ALJ failed to develop the record
in part because of "two obvious medical records gaps" from June
2015 to March 2017 and from August 2017 to February 2018.
(Pl.'s Br. at 10.)  Plaintiff further contends that the ALJ
failed to request medical records from Dr. Diaz, who treated
plaintiff for goiter.  (Id. at 11.)  In response, the
Commissioner argues that plaintiff, who had legal representation
at all phases of the administrative process, bears the burden to
submit evidence in support of her disability claim.  (Def.'s Br.
at 14-20.)  The Court will address each category in turn.

a. The alleged gap in the Record from 2015-2017 and 2017-2018

Plaintiff identifies "a 21 month gap in the Record, right
in the middle of the period at issue in this case" and "a five-
and-a-half month records gap[,]" spanning from June 2015 to
March 2017 and from August 2017 to February 2018.  (Pl.'s Br. at
10.)  Aside from noting that "[t]he Record reveals that during
this period of time, Dr. Lahiri was seen according to Dr.
Schatz[,]" (id.), plaintiff has neither identified nor explained
the relevance of these missing records.  Upon review of the
medical records, the Court has not discovered evidence to

suggest that plaintiff's medical status devolved during these gaps to the extent that the records' omission prejudiced plaintiff.

The record that plaintiff identifies as missing is a visit with Dr. Lahiri in October of 2017, which pulmonologist Dr. Schatz refers to in her visit summary in 2018.  (*See* R. 1406.) Dr. Schatz's recitation of this visit does not suggest that plaintiff's status had changed such that the 2018 records did not accurately reflect her status.  Per Dr. Schatz's summary, in October of 2017, plaintiff had: increased her exercise tolerance in tandem with a 100-pound weight loss; dyspnea on exertion walking up an incline or climbing more than one flight of stairs; intermittent cough secondary to postnasal drip; and ankle edema.  (R. 1406, 1786.)  By November of 2018, plaintiff reported that she was not using her oxygen and she experienced shortness of breath on long walks, occasional palpitations but no chest pain, and a frequent cough due to sinus congestion. (R. 1787.)

Plaintiff does not affirmatively identify other missing records during this period, but the Court reads the collective medical records as suggesting that any missing records would not be significant.  The references to dates during that period include: cardiology records which indicate that plaintiff had an echocardiogram in April of 2016 (R. 1435, 1439); medication

lists that indicate prescriptions were prescribed in June of
2015 (R. 1436, 1440-41, 1451, 1749, 1763); and a list of active
problems noting reactive hypoglycemia and obesity in November of
2016, and gastric bypass status and weight gain in November of
2015 (R. 1479, 1486, 1623).  Analogously, the treatment history
reports do not document any surgeries or hospital visits that
occurred during either of the two gap periods, which could have
alerted the ALJ to a worsening of plaintiff's symptoms.  *See,
e.g.,* (R. 1477 (documenting surgery in October of 2014 and
October of 2018); R. 1668-69 (documenting surgeries in 2014,
2018, and 2019)); *see also* Ubiles v. Astrue, No. 11-cv-6340
(MAT), 2012 WL 2572772, at *9-10 (W.D.N.Y. July 2, 2012)
(finding the ALJ's failure to develop the record was not
harmless when the alleged missing records included hospital
emergency room visits and those visits were caused by the
exacerbation of plaintiff's symptoms).

Likewise, the historical summaries within the treating
providers' reports suggest that plaintiff's condition had not
worsened before and after these gaps.  For instance, plaintiff's
prescriptions in June of 2015, prior to the gap, and in April of
2017, following the gap, do not significantly differ.  (*Compare*
R. 895 (listing active medications as: aborvastatin, furosemide,
hydralazine, lansoprazole, Lasix, metoprolol tartate, Vitamin B-
12, Vitamin D3-1, Zinc 50 mg capsule), *with* R. 1653 (listing

12

active medications as: hydralazine, metropolol tertate, Zinc 50
mg capsule, Vitamin B-12, Vitamin D, lansoprazole, aborvastatin
calcium, furosemide, Klor-Con M20).)  In May of 2018, Dr. Tolat
noted that plaintiff had been "well" since her ablation in 2013
and 2014, but plaintiff underwent cardioversion in April of 2018
after she developed recurrent atypical flutter.  (R. 1308.)
Plaintiff had maintained sinus rhythm since the April
cardioversion. (R. 1308; R. 1312 ("She has done well for
approximately 4 years until she redeveloped atypical flutter and
underwent cardioversion in April. . . . Since cardioversion she
has not had any recurrent arrhythmias.").)  At the hearing in
June of 2019, plaintiff testified that her weight had stayed the
same over the past six years, which suggests that plaintiff's
weight did not fluctuate significantly during these gap periods.
(R. 950.)

     After a searching review and without further information
from plaintiff, the Court cannot conclude that any missing
records were significant and would have altered the ALJ's
decision.  *See* Patricia K. v. Comm'r of Soc. Sec., 5:20-cv-37
(ATB), 2020 WL 7490323, at *8 (N.D.N.Y. Dec. 21, 2020) (noting
the difficulty in determining whether missing records would have
influenced an ALJ's decision when the court had not seen the
records and plaintiff did not identify specific information
contained in the records).  Because plaintiff has not

demonstrated how "the additional medical reports would undermine the ALJ's decision," Lena, 2012 WL 171305, at *9, the Court finds that the ALJ did not err by failing to obtain records from July 2015 to April 2017 and August 2017 to February 2018.  Any failure to obtain records was harmless error.

   *b. Dr. Diaz*

   Plaintiff argues that the ALJ failed to develop the record because the ALJ did not seek information from a physician, Dr. Diaz, whom the Record identifies as having treated plaintiff for goiter.  (Pl.'s Br. at 11.)  While the medical records contain references to a Dr. Diaz, (see R. 1425), plaintiff does not proffer evidence to suggest how Dr. Diaz's records would be significant or alter the ALJ's determination, and the records are not clear that Dr. Diaz even treated plaintiff more than once.

   An ALJ is not required to "obtain every medical file from every medical source the claimant has seen." Ubiles v. Astrue, No. 11-CV-6340 (MAT), 2012 WL 2572772, at *10 (W.D.N.Y. July 2, 2012).  Absent more information, the Court cannot be certain that plaintiff treated with Dr. Diaz for an issue that is relevant to the disability claim.  Given this context, the Court does not find that the ALJ failed to perform his duty to develop the record when the significance of this treatment was not apparent on the face of the record, and plaintiff has not

demonstrated that the omission of these records prejudiced her disability assessment.  Thus, the ALJ did not err by failing to develop the record with respect to Dr. Diaz.

ii.  *The ALJ failed to develop the record with respect to treating source medical opinions.*

Having concluded that the gap in medical records was not significant, the Court now considers whether the ALJ's failure to request and obtain medical opinions from plaintiff's treating sources requires remand.  Plaintiff argues that the ALJ's failure created a gap in the Record because there were no opinions from the following providers: pulmonologist Dr. Lahiri; cardiologist Dr. Tolat; APRN DiRamio; and Dr. Diaz.  (Pl.'s Br. at 12–14.)  Plaintiff argues that the ALJ had the affirmative duty to request opinions from these providers because their treatment notes offer no assessment of plaintiff's functional limitations.  (Id.)  The Commissioner responds that plaintiff had the burden to prove her disability and could have secured opinions from her treating sources.  (Def.'s Br.at 3–19.)

An ALJ has the affirmative "duty to obtain information from physicians who can provide opinions about the claimant.  The ALJ must make reasonable efforts to obtain a report prepared by a claimant's treating physician even when the treating physician's underlying records have been produced."  Santiago v. Comm'r of

Soc. Sec., No. 13CV3951-LTS-SN, 2014 WL 3819304, at *17
(S.D.N.Y. Aug. 4, 2014).

However, remand is not always necessary when an ALJ fails
to discharge his duty to request opinions from treating sources.
When "the record contains sufficient evidence from which an ALJ
can assess [a claimant's] residual functional capacity," the
absence of treating source opinions will not require remand.
Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir.
2013) (summary order).  Thus, the essential question is whether
the record contained sufficient evidence for the ALJ to assess
plaintiff's functional limitations.  See Keovilay v. Berryhill,
No. 3:19-cv-735 (RAR), 2020 WL 3989567, at *4 (D. Conn. July 15,
2020); Moreau v. Berryhill, No. 3:17-cv-396 (JCH), 2018 WL
1316197, at *7 (D. Conn. Mar. 14, 2018).  Whether a record
contains sufficient evidence without treating source opinions is
a fact-specific inquiry that hinges on the "circumstances of the
particular case, the comprehensiveness of the administrative
record," and whether the record "was sufficiently comprehensive
to permit an informed finding by the ALJ."  Sanchez v. Colvin,
No. 13-cv-6303 (PAE), 2015 WL 736102, at *5-6 (S.D.N.Y. Feb. 20,
2015).

The parties do not contest that the ALJ did not seek
medical opinions from plaintiff's treating sources.  The record
contains no evidence that the ALJ requested opinions from

plaintiff's providers or that providers ignored any requests to provide medical evidence. *See* Tankisi, 521 F. App'x at 33-34 ("[T]he ALJ's conclusions would not be defective if he requested opinions from medical sources and the medical sources refused.").  This failure to procure treating source opinions does not automatically require remand.  The question becomes whether the record contained sufficient evidence from which the ALJ could derive plaintiff's RFC, such that the ALJ's failure to seek opinions from all of plaintiff's treating sources does not necessitate remand.

For the reasons explained below, the Court finds that the record was inadequately developed because the treatment notes did not offer sufficient insight into plaintiff's functional limitations, and the ALJ violated the treating physician rule by assigning greater weight to the opinion of a non-examining medical expert rather than requesting opinions from plaintiff's treating providers.

   a. *The raw treatment notes do not offer sufficient insight into plaintiff's functional limitations.*

Administrative records may be sufficiently complete without opinions from a claimant's treating sources where the treatment notes offer insights into how the claimant's impairments affect her ability to function.  *See* Keovilay, 2020 WL 3989567, at *4-5; DeLeon v. Colvin, No. 3:15-cv-1106 (JCH), 2016 WL 3211419, at

17

*4 (D. Conn. June 9, 2016) (acknowledging that administrative records can be complete without treating source opinions when the records "contain notes that express the treating physician's views as to a claimant's residual function capacity, i.e., the treating physicians' views can be divined from their notes, and it is only a formal statement of opinion that is missing"). Here, plaintiff's medical records consist primarily of echocardiogram results, vitals from medical visits, and results from physical examinations.  This raw data offers little to no insight into plaintiff's ability to perform work functions or the opinion of plaintiff's treating sources regarding any functional limitations.  *See, e.g.*, Moreau, 2018 WL 1316197, at *8 (finding the record contained no informal RFC assessment when the physicians' notes assessed the plaintiff's "muscle tone, gait, language, and memory" but offered no assessment "of the scope of [plaintiff's] work-related capabilities").

For this reason, the medical records are not sufficient to serve as substitutes for the opinions that plaintiff's treating sources could provide.  *See* Sanchez, 2015 WL 736102, at *8 ("The critical point is that all of these records lack the nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature of Sanchez's mental-health conditions and their impact on her RFC.").  Absent treating sources' medical opinions that assess

plaintiff's functional limitations, singular reliance on the medical records would not offer sufficient insight into how plaintiff's impairments impact her RFC.

b. *The ALJ's treatment of the treating source opinions created a gap in the record from 2015 through the DLI of treating source opinions regarding plaintiff's function limitations.*

Plaintiff's administrative record included a total of five treating source opinions: primary care physician Dr. Brodie's letter from 2014; cardiologist Dr. Dahhan's letter from 2015 and two opinions from 2019; and pulmonologist Dr. Schatz's opinion from 2019.  (R. 582, 928–31, 1459–63, 1784–85, 1797–1800.)  The ALJ assigned these opinions little or partial weight, (*see* R. 928–31), and plaintiff argues that the ALJ's treatment ran afoul of the treating physician rule (Pl.'s Br. at 3–8).

The ALJ's "duty to develop the record goes hand in hand with the treating physician rule, which requires the ALJ to give special deference to the opinion of a claimant's treating physician."  Batista v. Barnhart, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004).[5]  "Proper application of the [treating physician] rule ensures that the claimant's record is comprehensive, including all relevant treating physician diagnoses and opinions, and requires the ALJ to explain clearly

---

[5] The treating physician rule applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527.  The current administrative regulations eliminate this rule, but the regulations apply to cases filed on or after March 27, 2017. 20 C.F.R. § 404.1520(c).  The treating physician rule applies to plaintiff's claim because plaintiff first filed this claim in 2013.  (R. 201–211.)

how these opinions relate to the final determination." Lacava
v. Astrue, No. 11-CV-7727 (WHP) (SN), 2012 WL 6621731, at *13
(S.D.N.Y. Nov. 27, 2012), *report and recommendation adopted*, No.
11-CV-7727 (WHP), 2012 WL 6621722 (S.D.N.Y. Dec. 19, 2012).
Because a treating physician has the "opportunity to develop an
informed opinion as to the physical status of the patient[,]" a
treating physician's opinion generally receives greater
deference than other medical sources under the treating
physician rule. Hallet v. Astrue, No. 3:11-cv-1181, 2012 WL
4371241, at *6 (D. Conn. Sept. 24, 2012). This rule stipulates
that "the opinion of a [plaintiff's] treating physician as to
the nature and severity of the impairment is given 'controlling
weight' as long as it 'is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in [the] case
record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)
(quoting 20 C.F.R. § 404.1527(c)(2)).

When an ALJ does not assign controlling weight to a
treating source's opinion, the ALJ shall consider several
factors to determine what weight to assign the opinion. Those
factors include the history of the treatment relationship, "the
'[n]ature and extent of the treatment relationship,' the
'[s]upportability' of the opinion with other relevant evidence,
including 'medical signs and laboratory findings,' the

'consistency' of the opinion 'with the record as a whole,' [and] whether the opining physician is a specialist." <u>Ortiz v. Comm'r of Soc. Sec.</u>, 309 F. Supp. 3d 189, 203 (S.D.N.Y. 2018) (quoting 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6)).  An ALJ's failure to explicitly recite each factor will not automatically compel remand; rather, the ALJ must have provided "good reasons" for the weight the ALJ assigns to the opinion.  <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32–33 (2d Cir. 2004) (per curiam).  Even where a treating physician's opinion is not controlling, the opinion "may still be entitled to significant weight because the treating source is inherently more familiar with claimant's medical condition than are other sources."  <u>Tankisi</u>, 521 F. App'x at 33.

Here, the ALJ did not assign controlling weight to a treating source's opinion.  The ALJ assigned partial weight to a letter that Dr. Brodie authored in May of 2014, which the ALJ reasoned was less reliable because: it did not contain a function-by-function assessment of plaintiff's limitations; physical therapy records documented plaintiff's improvement; and the opinion did not address cardiac symptoms.  (R. 930.)  Dr. Dahhan's opinion from 2015 received little weight because it did not provide a function-by-function assessment and subsequent treatment notes demonstrated that plaintiff's condition improved.  (R. 929.)

The opinions that Dr. Dahhan and Dr. Schatz provided after the DLI received similar treatment.  The ALJ assigned partial weight to the opinions that Dr. Dahhan produced in May and November of 2019 because the ALJ interpreted the limitations to apply to plaintiff's post-DLI condition and the limitations lacked support from the pre-DLI treatment notes.  (*See* R. 929–30.)  The opinion that Dr. Schatz provided in May of 2019 received little weight because Dr. Schatz rendered the opinion after the DLI and treatment notes did not reflect such severe limitations.  (*See* R. 930–31.)

The Court does not agree that the ALJ provided "good reasons" for assigning less weight to the opinions that Dr. Dahhan and Dr. Schwartz submitted in 2019.  Before concluding that the opinions were of lesser value because they referred to plaintiff's condition after the relevant period, the ALJ should have requested clarification or retrospective opinions from plaintiff's treating sources.  "Retrospective diagnoses and opinions are those from a treating physician that relate to a time period in the past[.]"  <u>Lacava</u>, 2012 WL 6621731, at *13. "If a physician who treated the claimant before . . . her date last insured provides a retrospective opinion, the treating physician rule applies and the opinion may be entitled to controlling weight."  <u>Perrone v. Saul</u>, No. 3:17-cv-125 (RNC), 2019 WL 4744820, at *5 (D. Conn. Sept. 30, 2019); *see also*

Clobridge v. Astrue, 5:07-cv-691, 2010 WL 3909500, at *7
(N.D.N.Y. Sept. 30, 2010) ("[A] treating physician's
retrospective opinion is entitled to controlling weight unless
it is contradicted by other medical evidence or overwhelmingly
compelling non-medical evidence.").

While Dr. Dahhan indicated in the May 2019 opinion that the
limitations applied back to plaintiff's condition as of that
month, that restriction offers no insight into whether
plaintiff's condition had altered since the DLI.  In the face of
such ambiguity, the ALJ could not have construed the absence of
a reference to the relevant period as evidence that plaintiff
did not have similar limitations before the DLI.  The ALJ should
seek clarification from Dr. Dahhan by requesting a retrospective
opinion that assesses plaintiff's limitations as of the DLI.
See, e.g., Perrone, 2019 WL 4744820, at *8-9 (remanding and
ordering the ALJ to determine whether the treating physician
intended his opinion to be retrospective and to seek a
retrospective opinion); Lacava, 2012 WL 6621731, at *17 (noting
the ALJ should have sought a retrospective opinion from
plaintiff's treating physicians when the physicians' assessments
were ambiguous with respect to whether they applied to the
relevant disability period).

The Court cannot characterize the ALJ's failure to
recontact plaintiff's treating sources as harmless error.  If

the ALJ had given greater weight to the opinions that Dr. Dahhan
or Dr. Schatz rendered in 2019, the ALJ might have found
plaintiff to be disabled.  Dr. Dahhan opined that plaintiff's
impairments would cause her to be absent from work at least
three times per month, while Dr. Schatz opined that plaintiff
would be absent at least twice per month and off-task for twenty
percent or more of a working day.  (*See* R. 1463, 1784.)  The ALJ
did not incorporate any such limitations into the RFC, but the
Vocational Expert testified that an individual who was off-task
for fifteen percent of the working day would not be able to
generally perform plaintiff's past relevant work as a payroll
supervisor.  (*See* R. 101.)  These limitations could impact
whether the ALJ finds plaintiff disabled.

Because the ALJ viewed Dr. Dahhan and Dr. Schwartz's
opinions as pertaining to plaintiff's post-DLI condition and
accorded those opinions less weight, the lack of treating source
opinions regarding plaintiff's condition from 2015 through the
DLI created a gap in the administrative record.

c. *The ALJ erred in relying on Dr. Todd's testimony without*
   *requesting opinions from plaintiff's treating sources.*

Non-examining medical expert Dr. Todd provided written
interrogatories and testified at the hearing in December of
2019.  The ALJ accorded partial weight to Dr. Todd's written
interrogatories and greater than partial weight to Dr. Todd's

hearing testimony.  (*See* R. 930, 999-1009, 1302-05.)  Plaintiff argues that the ALJ erred by assigning Dr. Todd's hearing testimony greater weight than the opinions of plaintiff's treating sources.  (*See* Pl.'s Br. at 2-9.)

An ALJ may consider the opinion of a medical expert when the ALJ "[b]elieves [a medical expert] may be able to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing." HALLEX 1-2-5-34.  "The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.  The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant."  Vargas v. Sullivan, 898 F.2d 293, 295-96 (2d Cir. 1990).

A non-examining medical expert's opinion may override the opinion of a treating physician when evidence in the record supports the medical expert's opinion.  *See* Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016).  However, "[e]ven where a non-examining opinion is afforded weight, it alone cannot be considered substantial evidence, nor can it constitute good reason for the limited weight given to a treating source opinion."  Tammy H. v. Comm'r of Soc. Sec., 5:18-cv-851 (ATB), 2019 WL 4142639, at *11 (N.D.N.Y. Aug. 30, 2019).

Dr. Todd's testimony, on its own, did not constitute substantial evidence that could override the opinions of plaintiff's treating sources.  Dr. Todd did not examine plaintiff and instead formulated his opinions after reviewing the treatment records of plaintiff's providers; without further clarification or insight from plaintiff's treating sources, this evidentiary basis is insufficient to permit Dr. Todd's opinion to outweigh those of plaintiff's treating sources.  *See* Scognamiglio v. Saul, 432 F. Supp. 3d 239, 251 (E.D.N.Y. 2020) (concluding that the ALJ lacked sufficient grounds to afford controlling weight to a non-examining expert's opinion when the expert "only reviewed other physicians' findings in the record"); Ridge v. Berryhill, 294 F. Supp. 3d 33, 60-61 (E.D.N.Y. 2018) (finding the ALJ improperly assigned controlling weight to the opinion of a non-examining medical expert when the expert never personally examined the claimant and the expert's opinion contradicted those of the treating sources).

To further develop the record with treating source opinions, the ALJ should have sought clarification or further evidence from Dr. Dahhan,[6] plaintiff's long-time cardiologist,

---

[6] The Court notes that at the time Dr. Schatz rendered her opinion in May of 2019, she may not have qualified as a treating physician because she began treating plaintiff in October of 2018.  However, on remand the ALJ shall also attempt to seek clarification from Dr. Schatz regarding whether she intended her opinion to be retrospective.  If Dr. Schatz continues to treat plaintiff, "the fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should

before according greater weight to the testimony of a medical
expert who did not examine plaintiff.  *See, e.g.*, Davis v.
Colvin, No. 6:14-cv-6373 (MAT), 2106 WL 368009, at *4 (W.D.N.Y.
Feb. 1, 2016) (remanding and directing the ALJ "to obtain
detailed functional assessments from plaintiff's treating
sources . . . or consulting sources if treating sources are
unable to provide such assessments"); Haskins v. Astrue, 2010 WL
3338742 (N.D.N.Y. Apr. 23, 2010) (instructing the ALJ to obtain
medical opinions by first recontacting the plaintiff's treating
physicians and then attempting to obtain opinions from
consultative examiners or medical experts if the treating
physicians were unable to provide the necessary opinions).  The
ALJ made no finding about why Dr. Dahhan could not clarify the
post-DLI opinions, and the fact that some of plaintiff's
treating sources submitted opinions suggests that they could be
receptive to providing clarified opinions.  *See* 20 C.F.R.
§ 404.1520(b)(2)(i) ("We may choose not to seek additional
evidence or clarification from a medical source if we know from
experience that the source either cannot or will not provide the
necessary evidence.").

Without further development of the treating source
opinions, the administrative record was not sufficient to enable

---

not be given some, or even significant weight."  Monette v. Astrue, 269 F.
App'x 109, 113 (2d Cir. 2008).

the ALJ to produce a reasoned RFC determination.  On remand, the ALJ should make reasonable efforts to obtain retrospective opinions from plaintiff's treating sources, including those sources from whom the administrative record currently lacks opinions.  Any retrospective opinions that these sources provide "must clearly refer to the relevant period of disability and not simply express an opinion to the claimant's current status." Vitale v. Apfel, 49 F. Supp. 3d 137, 142 (E.D.N.Y. 1999).

Because the ALJ's failure to develop the record is a threshold issue that impacts all aspects of a disability claim, the Court declines to address the other arguments that plaintiff raised in her brief.  *See* Morales v. Colvin, No. 13 Civ. 06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (remanding and declining to address the plaintiff's additional arguments "because the ALJ's analysis may change on these points upon remand").

## B. Plaintiff's Case Shall be Remanded to a Different ALJ for Further Proceedings.

Plaintiff has not raised an Appointments Clause challenge in her brief, but the Court orders that this case be remanded to a different ALJ as a cautionary response to the Supreme Court's recent decision in Carr v. Saul, 141 S. Ct. 1352 (2021).

ALJ Borré presided over both phases of plaintiff's administrative proceedings, denying her application for benefits

in 2015 and then in 2020.  (*See* R. 258-264, 1144.)  At the time
ALJ Borré first issued a decision denying plaintiff's request
for benefits, ALJ Borré would have been among the many Social
Security ALJs whose appointments were considered
unconstitutional following the Supreme Court's ruling in <u>Lucia
v. S.E.C.</u>, 138 S. Ct. 2044 (2018).  In <u>Lucia</u>, the Court held
that SEC ALJs were "Officers of the United States" who, pursuant
to the Appointments Clause, could only be appointed by the
President, a court of law, or the head of a department.  <u>Id.</u> at
2052-55.  The Court further held that the appropriate remedy for
an individual whose proceeding was presided over by an
unconstitutionally appointed ALJ would be a new hearing before a
different ALJ.  <u>Id.</u> at 2055.  After <u>Lucia</u>, the Social Security
Administration's Acting Commissioner ratified the appointments
of the Social Security ALJs and issued SSR 19-1p, which
established the review procedure for cases involving claimants
who raised timely challenged under the Appointments Clause
before an ALJ.  *See* SSR 19-1p, 84 Fed. Reg. 9582-02, 2019 WL
1202036 (Mar. 15, 2019). As a result, ALJ Borré would have been
unconstitutionally appointed at the time he issued his first
decision and constitutionally appointed when he issued his
second decision.

   The Administration's post-<u>Lucia</u> guidance did not address
the review procedure for claimants who raised challenges under

29

the Appointments Clause for the first time on appeal to the district court, without challenging the appointment before the ALJ.  The Supreme Court addressed this administrative exhaustion question in Carr v. Saul, in which the Court held that a plaintiff does not waive an appointments challenge before a federal court by failing to first raise the challenge before the ALJ.  *See* 141 S. Ct. 1352, 1362 (2021).

Plaintiff did not raise an Appointments Clause challenge before the ALJ or this Court, and the Carr decision referred to claimants who raised appointments challenges in federal court.  However, ALJ Borré was not constitutionally appointed when he denied plaintiff's request in 2018, and this violation was not remedied because plaintiff's case returned to ALJ Borré on remand from the district court.  Thus, plaintiff is in a unique position: her first administrative hearing proceeded before an ALJ who was not constitutionally appointed; her second administrative hearing was before the same ALJ who was constitutionally appointed at all relevant times for the second hearing and decision; and plaintiff did not raise an Appointments Clause challenge before the ALJ or before this Court.  The question the Court must now decide is whether plaintiff's case should be remanded to a different ALJ.

The Court is unaware of any Second Circuit decisions that address Carr's impact on a case with a similar procedural

history.   In <u>Welch v. Commissioner of Social Security</u>, the U.S. District Court for the Southern District of Ohio was presented with a similar procedural stance and granted the plaintiff's request for a hearing before a different ALJ. *See* 2:20-cv-1795, 2021 WL 1884062 (S.D. Ohio May 11, 2021), *report and recommendation adopted*, 2021 WL 2142805 (S.D. Ohio May 26, 2011).   In <u>Welch</u>, an ALJ who was unconstitutionally appointed denied the plaintiff's request for disability benefits in 2016. <u>Id.</u> at *2-3.   The plaintiff appealed the decision to the district court, and in 2018 the district court remanded the case upon the parties' joint motion.   <u>Id.</u> at *2.   The district court remanded to the same ALJ, and the plaintiff formally requested that her case be transferred to a different ALJ because of <u>Lucia</u>.   <u>Id.</u>   Plaintiff's case remained with the same ALJ, and the ALJ denied her request for benefits in 2020.   <u>Id.</u> at *1-2. On appeal to the district court, the plaintiff challenged the constitutionality of the ALJ's appointment for the first administrative hearing and argued that the violation had not been remedied because the district court remanded plaintiff's case to the same ALJ.   Even though the ALJ was properly appointed for plaintiff's second disability hearing and decision, the plaintiff argued that she was entitled to a new hearing before a different ALJ to remedy the unconstitutionality of the ALJ's appointment during the first disability hearing.

Id. at *2-3. The district court agreed, reasoning that "[b]ecause [the ALJ] initially heard and ruled upon [p]laintiff's claim, he could not un-ring that bell and 'be expected to consider the matter as though he had not adjudicated before.'"  Id. at *5 (quoting Lucia, 138 S. Ct. at 2055)).

Here, unlike the plaintiff in Welch, plaintiff did not raise an Appointments Clause challenge in her brief,[7] but the procedural history suggests that plaintiff may be entitled to a hearing before a different ALJ to remedy the constitutional violation of her first administrative hearing and decision. Although ALJ Borré had been properly appointed by the date that he presided over plaintiff's hearing in 2019 and he issued a new decision in 2020, ALJ Borré was not properly appointed when he denied plaintiff benefits in 2018.  Thus, the initial constitutional violation could remain unremedied and warrant a hearing before a different ALJ.

Because the Court remands for further development of the record, the Court need not consider whether this Appointments Clause issue would independently merit remand where the plaintiff did not raise the issue before the court.  However, to remedy any potential constitutional violation from the first

---

[7] Carr had not been decided when the parties filed their briefs.

administrative proceeding, the Court orders that this case be remanded to a different ALJ.

V.    Conclusion

For the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision is GRANTED and the Commissioner's motion to affirm that decision is DENIED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3).


SO ORDERED this **1st** day of **September, 2021** at Hartford, Connecticut.

                                        /s/
                        _____

                        Robert A. Richardson
                        United States Magistrate Judge